THE LUGANO.

(Circuit Court of Appeals, Fifth Circuit. March 16, 1915.)

No. 2712.

SALVAGE 40—CUSTOMS DUTIES—CARGO SALVED FROM WRECK—PRIORITY OF CLAIMS.

In dealing with the proceeds of property salved from a vessel wrecked or abandoned at sea, brought into a port of the United States by the salvors and sold under order of the court, both under the authorities and under Rev. St. § 3058, as amended by Act Feb. 23, 1887, c. 221, 24 Stat. 415 (Comp. St. 1913, § 5760), which provides that in such case the property may be regarded as the property of the salvors, and the valuation thereof and payment of duties thereon can be made accordingly, "and with due reference to the condition of the said merchandise as thus saved and the necessities of the case," the court has power to give the claims for salvage priority over that of the government for customs duties.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 105; Dec. Dig. 40.]

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit in admiralty by Dunham Albury and others against cargo salved from the British ship Lugano; James Penwill and others, claimants. From the decree of distribution the United States appeals. Affirmed.

For opinion below, see 215 Fed. 963.

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. S. Phillips, U. S. Atty., of Tampa, Fla., for the United States.

G. Bowne Patterson, of Key West, Fla., and Frederick M. Brown, of New York City (Butler, Brown, Wyckoff & Campbell, of New York City, on the brief), for appellees Penwill and others.

George W. Allen, of Key West, Fla., and Eugene O. Locke, of Jacksonville, Fla., for appellees Albury and others.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge. The decree of the District Court is presented for review by an appeal sued out by the United States. No other party in interest is complaining. For the material facts of the case reference is made to the statement of them found in the opinion rendered by the District Judge. Albury et al. v. Cargo of The Lugano (D. C.) 215 Fed. 963.

Complaint is made of that feature of the decree which gave to the claim for salvage priority over that of the government for customs duties. For support of its ruling to this effect the court referred to the decision rendered in the case of Merritt v. One Package of Merchandise, etc. (D. C.) 30 Fed. 195. Because the controversies in the case arise out of conflicting claims to the proceeds of the sale under the orders of the court of "merchandise saved from a vessel wrecked or abandoned at sea, or on or along the coasts of the United States, and promptly brought into a port of the United States by or in possession of the salvors of the same," we think that ruling has the additional support of a statute which was enacted not long after the decision mentioned was rendered. That decision was made in December, 1886. In February, 1887, a statute was enacted which contained the following:

"Under such regulations as the Secretary of the Treasury may prescribe, merchandise saved from a vessel wrecked or abandoned at sea, or on or along the coasts of the United States, and promptly brought into a port of the United States by or in possession of the salvors of the same, can, for the purpose of its title, be regarded as the property of such salvors, and the valuation thereof and payment of duties thereon can be made accordingly and with due reference to the condition of the said merchandise as thus saved and the necessities of the case: Provided, however, that such bringing in by salvors shall be in good faith and without intent to evade the just payment of duty: And provided further, that nothing herein contained shall be so construed as to prejudice in any other respect the rights of property, or of or through abandonment or allowance of the owner, or any other person interested in said merchandise." U. S. Comp. Stat. 1913, § 5760.

It may be of some significance that the provision just quoted, though it dealt with a subject which had very recently been dealt with in a litigation which, because of the circumstances of the shipwreck out of which it grew, it may be supposed attracted considerable public notice, does not manifest a purpose to change the rule which had been applied by the court in that litigation, with the result of subordinating the government's claim against the saved goods for duties thereon to the claim of the salvors for rescuing them from the sea. But whether the then recent rendition of such a decision in such a case is or is not to be re-

garded as shedding light on the somewhat ambiguous terms of the above-quoted provision of the statute, we think that the language of the provision, considered with reference to the subject dealt with, makes it sufficiently plain that in such cases as are provided for the court is vested with authority to accord to the claim of a salvor priority over that of the government for duties on merchandise so saved. This authority is found in that part of the provision which empowers the court, in ascertaining the value of the merchandise and in providing for the payment of duties thereon, to do so "with due reference to the condition of the said merchandise as thus saved and the necessities of the case."

Among the things which it is permissible to recognize as necessities of such cases as are provided for are the rescue of the goods as a prerequisite of the court's being afforded an opportunity to deal with them and of there being anything upon which the government's claim for duties could attach, and the recognition of such claims against what is saved as must be allowable if those who might be in a position to render required service in the rescue are to have a motive impelling enough to induce the undertaking of the service. The circumstances of a shipwreck may well be such that any one who may be in a position to save the cargo or a part of it would not have the requisite motive to incur the outlay, labor, and perils of the undertaking if any claim of a reward therefor had to be subordinated to the government's claim against what might be saved for duties thereon, and that the owners of the wrecked cargo or those in charge of the ship which had carried it might be expected to abandon both to their fate if it was likely that any efforts on their part to procure or effect a rescue would be permitted to inure to the sole or joint benefit of a government asserting a claim to duties or of a salvor whose services were sought or availed of. While it is not to be denied that what the lawmakers intended by the enactment above quoted might well have been made clearer, yet we think it is to be gathered from the language used that a court charged with the administration of property coming into its custody in the circumstances mentioned was thereby empowered so to deal with claims asserted against it or the proceeds of the sale of it as not only to give a preference to the one allowed as compensation for rescuing the property from the sea, but to recognize that the government's claim on the residue for duties is affected, and the amount which would have been demandable on this score if the importation had been in the ordinary way is made subject to substantial reduction, by the fact that the property to which such claim attached was brought in damaged from a shipwreck, and, further, that the owner of the property should have some substantial benefit from the salvage. In permitting its disposition of the conflicting claims to be influenced by such considerations, the court is to be regarded as acting "with due reference to the condition of the said merchandise as thus saved and the necessities of the case."

It is not to be inferred from what has been said that we think that the statute above mentioned was required to empower the court to give such effect to the salvor's claim upon or interest in what was saved, acquired by the rendition of the salvage service, as was involved in

according to it priority over the subsequently attaching claim of the government for customs duties. United States v. Wilder, 3 Sumn. 308, Fed. Cas. No. 16,694; The Marquis of Huntly, 3 Haggard, 246; The Bee, 1 Ware, 332, Fed. Cas. No. 1,219; United States v. Cornell Steamboat Co., 202 U. S. 184, 190, 26 Sup. Ct. 648, 50 L. Ed. 987; Benedict on Admiralty (4th Ed.) § 227; Cohen's Admiralty Law, 22, 185; Marvin on Wreck & Salvage, § 122; Flanders on Maritime Law, 316.

The decree appealed from, and the opinion which accompanied it, show that the court undertook to dispose of the claims asserted substantially in the manner sanctioned by the statute. We have not been convinced that the appellant has any just ground of complaint against what was done. With reference to the appellant's complaint of the disallowance of the item for expenses incurred by it, nothing need be added to what was said by the District Judge in disposing of that item.

The decree appealed from is affirmed.